UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| W LYNN FRAZIER, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. C-10-2 |
| | § | |
| AUSTIN EXPLOSIVES COMPANY, | § | |
| | § | |
| Defendant. | § | |

## ORDER

On this day came on to be considered (1) Defendant's Motion for Partial Summary Judgment of Non-infringement of Claims 1-3 and of Invalidity of Claim 1 of U.S. Patent No. 6,796,376 (D.E. 51) ("Non-Infringement Summary Judgment Motion") and (2) Defendant's Motion for Partial Summary Judgment of Invalidity of All Claims Based on Best Mode Violation and Indefiniteness and of Claims 2 and 3 Based On Anticipation, Obviousness, and Written Description Defenses (D.E. 85) ("Invalidity Summary Judgment Motion").   For the reasons stated herein, Defendant's Non-Infringement Summary Judgment Motion is GRANTED IN PART.   (D.E. 51.)   The Court, in its discretion, dismisses without prejudice Defendant's invalidity counterclaims (D.E. 16 at 27) and therefore DENIES AS MOOT Defendant's Invalidity Summary Judgment Motion (D.E. 85) as well as the invalidity section of Defendant's Non-Infringement Summary Judgment Motion.  (D.E. 51 at 26-30.)

### I.    Jurisdiction

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1338(a) (exclusive jurisdiction over patent cases).

## II.      Factual and Procedural Background

On January 5, 2010, Plaintiff W. Lynn Frazier filed this patent infringement action under 35 U.S.C. § 271 against Defendant Austin Explosives Company. (D.E. 1.) The relevant patent, U.S. Patent No. 6,796,376 ("'376 Patent"), was issued to Plaintiff Frazier on September 28, 2004.  The '376 Patent relates to a composite bridge plug, a device utilized in oil well drilling, and has four claims.  Plaintiff accuses Defendant's ProDrill bridge plugs of infringing the '376 Patent.  On July 16, 2010, the Court granted Defendant's Motion for Summary Judgment with respect to Claim 4, finding that Defendant's tools did not infringe this Claim, and finding this Claim invalid under 35 U.S.C. § 101, 112.  (D.E. 42.)  The Court issued a Claim Construction Order on July 26, 2010, following a July 13, 2010 Markman hearing.  (D.E. 46.)

Defendant now seeks summary judgment with respect to the three remaining claims of the '376 Patent.  (D.E. 51; 85.)  Defendant filed its Non-Infringement Summary Judgment Motion on August 23, 2010.   (D.E. 51.)   Plaintiff filed a Response on September 17, 2010.  (D.E. 70.)  Thereafter, Defendant filed a Reply and Plaintiff filed a Surreply.  (D.E. 78; D.E. 110.)

## III.     Discussion

### A.      Summary Judgment Standard

Summary judgment in a patent case is subject to standard procedures established in Federal Rule of Civil Procedure 56.  See, e.g., AFG Industries, Inc. v. Cardinal IG Co., Inc., 375 F.3d 1367, 1371 (Fed. Cir. 2004).   "[A] trial court cannot reach a conclusive finding of non-infringement if the record shows some evidence supporting a finding of non-infringement and some evidence to the contrary."  Id.

"Clear and convincing evidence" is required for an invalidity claim. TypeRight Keyboard Corp. v. Microsoft Corp., 374 F.3d 1151, 1158 (Fed. Cir. 2004). Summary judgment on invalidity is also considered under standard summary judgment rules. Zenith Electronics Corp. v. PDI Communication Systems, Inc., 522 F.3d 1348, 1356-57 (Fed. Cir. 2008).

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The substantive law identifies which facts are material. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ellison v. Software Spectrum, Inc., 85 F.3d 187, 189 (5th Cir. 1996). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; Judwin Props., Inc., v. U.S. Fire Ins. Co., 973 F.2d 432, 435 (5th Cir. 1992).

On summary judgment, "[t]he moving party has the burden of proving there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law." Rivera v. Houston Indep. Sch. Dist., 349 F.3d 244, 246 (5th Cir. 2003); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party meets this burden, "the non-moving party must show that summary judgment is inappropriate by setting forth specific facts showing the existence of a genuine issue concerning every essential component of its case." Rivera, 349 F.3d at 247. The nonmovant "may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); see also First Nat'l Bank

of Arizona v. Cities Serv. Co., 391 U.S. 253, 270 (1968). The nonmovant's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." Willis v. Roche Biomedical Labs., Inc., 61 F.3d 313, 315 (5th Cir. 1995); see also Brown v. Houston, 337 F.3d 539, 541 (5th Cir. 2003) (stating that "improbable inferences and unsupported speculation are not sufficient to [avoid] summary judgment").

Summary judgment is not appropriate unless, viewing the evidence in the light most favorable to the non-moving party, no reasonable jury could return a verdict for that party. Rubinstein v. Adm'rs of the Tulane Educ. Fund, 218 F.3d 392, 399 (5th Cir. 2000).

### B.      Infringement

#### 1.      Applicable Law

A patent infringement analysis involves two steps.  "The first step is determining the meaning and scope of the patent claims asserted to be infringed. The second step is comparing the properly construed claims to the device accused of infringing." Solvay S.A. v. Honeywell Intern., Inc., 622 F.3d 1367, 1379 (Fed. Cir. 2010).   An accused device infringes "if it incorporates **every limitation of a claim**, either literally or under the doctrine of equivalents.  **If, however, even one claim limitation is missing or not met, there is no literal infringement**." MicroStrategy Inc. v. Business Objects, S.A., 429 F.3d 1344, 1352 (Fed. Cir. 2005) (citations omitted; emphasis added); Kraft Foods, Inc. v. Int'l Trading Co., 203 F.3d 1362, 1370 (Fed. Cir. 2000).  This case is at the second stage of the infringement analysis.

2.     **Discussion**

a.     **Upper Collar Limitation**

Claims 1 and 2 of the '376 Patent contain the following limitation: "A bridge plug comprising . . . an upper collar positioned about the upper portion of the mandrel." (D.E. 1-1 at 13.)[1]  Claim 3 is identical to Claim 2, except it provides that "the engaging portion is above the collar." (D.E. 1-1 at 14.)  This Court previously invalidated Claim 4. (D.E. 45.)

With respect to the "upper collar" limitation, Plaintiff's amended infringement contentions state "[t]he 'setting sleeve' is the upper collar that is positioned about the upper portion of the mandrel." (D.E. 52-1 at 9.)  Although Plaintiff previously relied upon the doctrine of equivalents as an alternative to literal infringement, he has since abandoned this argument and relies solely on literal infringement. (D.E. 111 at 5 ("Because both claims 1 and 2 are literally infringed, there is no need to rely on the doctrine of equivalents, and Plaintiff does not intend to argue infringement under the doctrine of equivalents . . . .").)[2]  As Claim 3 is identical to Claim 2 in all respects except one, the Court understands that Plaintiff intends to rely only on literal infringement for

---

[1]The following definitions from the Court's July 26, 2010 Claim Construction order are relevant to this discussion:

> Upper collar: "An outer component that causes the components between itself and the head member to be compressed as the mandrel and head members are pulled upwardly during the setting process due to its axial contact with the engaging tube which prevents it from moving upwards."
>
> Positioned about: "surrounding the mandrel allowing for relative movement between two components."
>
> Upper portion: "the portion of the mandrel that extends longitudinally from the middle portion."
>
> Mandrel: "a cylindrical bar, spindle, or shaft that acts as a centralized support member, around which outer components are positioned about or attached to."
>
> Comprising: "including but not limited to."

(D.E. 46 at 28-30.)

[2] In light of this statement, the Court DENIES AS MOOT Defendants' Motion for Reconsideration of June 9, 2010 Order Granting Leave to Amend Infringement Contentions with the Doctrine of Equivalents. (D.E. 60.)

this claim as well.  The question on summary judgment, therefore, is whether the "setting sleeve" on Defendant's ProDrill bridge plugs literally infringes the "upper collar" limitation of Claims 1-3 of the '376 Patent.[3]

Defendant argues that the "setting sleeve" on the ProDrill bridge plug does not literally infringe the "upper collar" limitation of the '376 Patent for the following reasons: (1) the "setting sleeve" is not itself part of the bridge plug, but rather a separate tool used to set the bridge plug into place in a wellbore; (2) Frazier has admitted that the "setting sleeve" is in fact the "engaging tube" as that term is used in the '376 Patent, not the upper collar; and (3) the "setting sleeve" is not "positioned about" the mandrel.  (D.E. 51 at 7-12; see also D.E. 78 at 8-14.)  Plaintiff disagrees, and argues that (1) the "setting sleeve" is literally the "upper collar," because it meets the Court's definition, (2) the "setting sleeve" is not in fact the "engaging tube," as a separate feature known as the "setting cylinder" in fact sets the bridge plug into place, (3) the "setting sleeve" is not "separate and distinct" from the bridge plug, and (4) the "setting sleeve" is in fact "positioned about" the mandrel.  (D.E. 70 at 18-20; see also D.E. 110 at 6-16.)

###### i.    The "Setting Sleeve" is Separate from the Bridge Plug

The Court must first consider whether the bridge plug claimed in the '376 Patent is required to be a single device, such that all components (including the upper collar) must be a part of the tool itself.  The relevant terms for this analysis appear at the beginning of the claims: "a bridge plug comprising . . . ."  (D.E. 1-1 at 13.)

---

[3] Plaintiff's preliminary infringement contentions identified the "composite cap" of the ProDrill bridge plug as the "upper collar," (D.E. 51-3 at 38) and only in his amended infringement contentions did Plaintiff argue instead that the "setting sleeve" infringed the "upper collar" limitation.  (D.E. 52-1 at 9.)

The term "bridge plug" is defined in relevant part as "any tool that isolates one wellbore zone from another." (D.E. 46 at 28.)  The Court's definition contemplates only one "tool" that is used to isolate a wellbore zone, and does not also include separate devices used to set the bridge plug into place.  Plaintiff argues that "[t]here is no requirement that the bridge plug be a single unitary structure." (D.E. 70 at 19.)  While it is true that the bridge plug as described in the '376 Patent is composed of different parts, it would be incorrect to conclude that the term "bridge plug" can include other tools used only at certain times in operation of the bridge plug.  Rather, the term is limited to a tool (with its various components) that actually "isolates one wellbore zone from another."

The Court defined "comprising" as "including but not limited to" the elements described within each Claim. (D.E. 46 at 28, 30.)   In doing so, the Court explained that "'[c]omprising' is a term of art used in claim language which means that the named elements are essential, but other elements may be added." (D.E. 46 at 25 (citing Genentech, Inc. v. Chiron Corp., 112 F.3d 495, 501 (Fed. Cir. 1997).)  Thus, the term "comprising," as used in this context, requires the bridge plug to have the listed components, with the possibility of certain other unrecited components.  It does not, however, mean that the claimed bridge plug may include other elements that are considered part of a separate device used in conjunction with the bridge plug only at certain times.

Thus, the terms "bridge plug" and "comprising," when taken together, lead to the conclusion that all components described in Claims 1, 2, and 3 must be part of the bridge plug itself, not a separate device.  It follows that if a given component of the accused bridge plug is not a part of said bridge plug, the accused bridge plug cannot infringe a

claim of the '376 Patent.  Thus, the Court must consider whether the "setting sleeve" is part of the ProDrill bridge plug.

The summary judgment evidence firmly establishes that the "setting sleeve" is a separate component apart from Defendants' ProDrill bridge plug, and therefore cannot meet the "upper collar" limitation of Claims 1-3.  The ProDrill tool, as depicted in Defendants' ProDrill Composite Plugs catalog, does not identify a "setting sleeve" component.  (See, e.g., D.E. 52-1 at 29-33.)  Rather, the catalogue demonstrates "Setting Tool Assembly," wherein the user is instructed to "screw setting sleeve to setting tool and all the way back," and thereafter attach this structure to the bridge plug.  (D.E. 52-1 at 34, 35.)  The instructions allow for reuse of the setting tools, stating that the "setting tools should be thoroughly redressed before each run."  (D.E. 52-1 at 44.)   In addition, the "Setting Tool Specifications for the Pro-Drill Plug" prescribe different setting sleeves depending on which length bridge plug is being used  (D.E. 52-1 at 45) and have a separate page for "Setting Sleeves," which are "use[d] to set" the bridge plug.  (D.E. 52-1 at 48.)  Thus, the available information on the ProDrill tools demonstrates that the setting sleeve is in fact a separate (albeit related) component used in the setting process, not a part of the ProDrill bridge plug itself.   In his declaration, Frazier admits that the illustrations of the ProDrill Composite Plug are "a fair and accurate depiction of the ProDrill Composite Plug that [he] ha[s] personally handled and disassembled."  (D.E. 70-3 at 3.)

The conclusion that the "setting sleeve" in Defendant's ProDrill plug is a separate component is further supported by Frazier's own deposition testimony.   During his deposition, Frazier confirmed that he did not consider the "setting sleeve" on his own

tools to be a bridge plug, and that he only includes a setting sleeve in a customer order "when the customer asks for a setting sleeve." (D.E. 78-2 at 22.) Frazier also admitted that when the bridge plug is set, the setting sleeve is "normally" withdrawn from the wellbore, and that it is usually an "accident" or "mistake" when a setting sleeve is kept on a bridge plug already set in place. (D.E. 78-2 at 23.) Frazier further confirmed that the "interlocking feature" of his bridge plug does not work properly unless the setting sleeve has been removed. (D.E. 78-2 at 23 (Q: "So in your invention, the interlocking feature can only work if the setting sleeve is gone, correct?" A: "Yes.").). This further supports the conclusion that a "setting sleeve" is a separate component from the bridge plug itself, and that Defendants' accused bridge plug therefore does not infringe the "upper collar" limitation in Plaintiff's patent.

Plaintiff contends that whether the "setting sleeve" in Defendants' bridge plug is removed (or removable) is irrelevant to the question of whether it is part of the bridge plug tool. He points out that under Claim 2, for example, the entire upper portion of the mandrel may be removed without altering its status as part of the bridge plug. (D.E. 109 at 11.) As Plaintiff admits, however, Claim 2 expressly recites that the upper portion of the mandrel "is removed from the bridge plug during the setting of the bridge plug." (D.E. 1-1 at 14; D.E. 109 at 11.) Such a recitation is absent with respect to the upper collar. Neither the Claims nor this Court's definition suggests that the upper collar is removed from the bridge plug during the setting process. Rather, as stated in the specification, "[w]hen the user desires to drill out the composite bridge plug system from the conduit, the user drills into the mandrel and the upper collar first." (D.E. 1-1 at 13.) Thus, the upper collar is removed only when the entire bridge plug is being taken out of

the wellbore, and must be drilled out along with the rest of the device.  If anything, the lack of any reference to removal of the upper collar further supports the Court's conclusion that the "setting sleeve" does not infringe the upper collar limitation.

While Frazier has submitted a declaration, wherein he states that "[t]he ProDrill Plugs include a setting sleeve, which provides the upper collar," (D.E. 70-3 at 7) he provides no significant analysis to support this conclusion.  It is well established that a plaintiff may not create a genuine issue of material fact merely by submitting an affidavit that conflicts with deposition testimony, without adequately explaining the reason for the discrepancy.  See, e.g., Gemmy Indus. Corp. v. Chrisha Creations Ltd., 452 F.3d 1353, 1359 (Fed. Cir. 2006) (Patentee "has the duty to provide a satisfactory explanation for [a] discrepancy at the time the declaration is filed.  To allow him to preclude summary judgment simply by contradicting his own prior statements would seriously impair the utility of Federal Rule of Civil Procedure 56.") (quoting Sinskey v. Pharmacia Opthalmics, Inc., 982 F.2d 494, 498 (Fed. Cir. 1992); Copeland v. Wasserstein, Perella & Co., Inc., 278 F.3d 472, 482 (5th Cir. 2002) ("[W]hen the sole evidence purporting to create a genuine issue of material fact and thus to preclude summary judgment is an affidavit that conflicts with deposition testimony, we have required an explanation of that conflict.").  No adequate explanation is provided here.

Plaintiff has also submitted Kevin Trahan's expert opinion, which also concludes that the "setting sleeve" meets the "upper collar" limitation.  (D.E. 70-4 at 6-7.) [4]  While

---

[4] Defendant has filed a Motion to Exclude the Expert Reports and Testimony of Mr. Kevin Trahan, as they Relate to Certain Issues of Alleged Infringement and Invalidity.  (D.E. 95.)  Defendant objects to Mr. Trahan's opinion as to the "mandrel," as it relates to Claim 2 (shear stud and top cap), his doctrine of equivalents argument as to the "upper collar," and his discussion of the anti-rotation lugs on the prior art "Elite" Bridge Plugs.  (D.E. 95.)  As the Court does not address Defendant's Claim 2 argument on summary judgment, and Plaintiff has abandoned his doctrine of equivalents argument with respect to the "upper collar," these aspects of this motion are now moot.  As to the remaining aspect, the Court finds that

Trahan provides more extensive analysis on this issue, he does not sufficiently address the issue of whether the "setting sleeve" is a separate tool, as compared to part of the bridge plug.  Rather than refute Defendant's contention that the "setting sleeve" is a separate component, Trahan contends that this Court's definition of "bridge plug" "does not require that the bridge plug be a single unitary structure," and rather "every bridge plug is necessarily composed of several moving parts that work together."  (D.E. 70-4 at 7.)   It is true that a bridge plug includes "moving parts that work together," as contemplated in this Court's own claim construction order. (See, e.g., D.E. 46 at 28 (defining "positioned about" as "surrounding the mandrel allowing for relative movement between two components").) This, however, does not mean that separate tools used in conjunction with the bridge plug for limited periods automatically become a part thereof, subject to the protection of the '376 Patent.  To construe the '376 Patent as Plaintiff suggests could render it ambiguous or indefinite, and possibly subject to invalidity.  See 35 U.S.C. § 112; Exxon Research & Eng'g Co. v. United States, 265 F.3d 1371, 1375 (Fed. Cir. 2001) ("If a claim is insolubly ambiguous, and no narrowing construction can properly be adopted, we have held the claim indefinite.").  The Court's definition of "comprising" precludes a finding that separate elements can be considered part of a bridge plug, for the reasons discussed above.

In light of the previous discussion, the Court concludes that there is no genuine issue of material fact that the "setting sleeve" is a separate tool, and not part of the ProDrill bridge plug.  As such, the "setting sleeve" cannot meet the "upper collar" limitation of Claims 1-3 of the '376 Patent.   Summary judgment is thus appropriate.

---

Mr. Trahan has provided sufficient support for his expert opinion testimony, as his expert report states that his opinion is based upon his review of numerous documents, along with his education and experience. (D.E. 95-3 at 8-9.).  The Motion to Exclude is DENIED.  (D.E. 95.)

### ii. The Engaging Tube is the "Setting Sleeve"

The Court further concludes that summary judgment is appropriate in light of this Court's definition of "upper collar," which references a separate engaging tube. This Court defined "upper collar" as "[a]n outer component that causes the components between itself and the head member to be compressed as the mandrel and head members are pulled upwardly during the setting process due to its **axial contact with the engaging tube** which prevents it from moving upwards." (D.E. 46 at 28 (emphasis added).) Thus, this definition necessarily requires the "upper collar" and the "engaging tube" to be two separate elements. Nevertheless, Frazier himself admitted during his deposition that the "setting sleeve" on the ProDrill tools is in fact the "engaging tube," not the "upper collar." [5] When asked "in the figures and in the text of your patent, the setting sleeve is different than the upper collar as used in your patent?," Frazier responded "yes," and when asked "the engaging tube is the setting sleeve as described in your patent?," Frazier again responded "yes." (D.E. 78-2 at 20.)[6]

---

[5] Plaintiff has filed Objections to Deposition Testimony of Lynn Frazier and Motion to Strike. (D.E. 107.) Plaintiff seeks to exclude certain portions of Frazier's deposition on the grounds that it is irrelevant under Rule 402, and should be excluded under Rules 701, 702 because it constitutes improper opinion testimony, without Plaintiff being identified as an "expert." (D.E. 107 at 1-2.) The Court finds no basis to exclude this deposition testimony. As one court has explained, "courts regularly allow lay witnesses, specifically the creators of particular products or inventions, to testify with regard to their personal knowledge of [the] particular invention . . . ." Irise v. Axure Software Solutions, Inc., 2009 WL 3615075, at *30 n. 10 (C.D. Cal. Sept. 11, 2009). As Frazier's deposition testimony relates to the functioning of his own invention, his testimony is admissible. Plaintiff's Motion to Strike is DENIED. (D.E. 107.)

[6] At another point in his deposition Frazier stated that "[t]he setting sleeve acts like our push sleeve," again declining to state that the "setting sleeve" is literally the "upper collar." (D.E. 78-2 at 18.) Frazier submitted another declaration with his Surreply, in which he seeks to "clarify certain parts of [his] deposition testimony." Notably, he states that the "setting sleeve" is the engaging tube in his own bridge plug, but in the ProDrill tools, the "setting cylinder" is used as an engaging tube, and the "setting sleeve" is the upper collar. (D.E. 78-1 at 2-3.) Frazier, however, fails to adequately explain the reason for the contradiction between the statements in his declarations and those during his deposition. As noted above, a contradiction between deposition statements and those in a declaration cannot defeat summary judgment without an adequate explanation.

The Court may properly consider the deposition testimony of a patentee in deciding a motion for summary judgment.  See, e.g., Chore-Time Equipment, Inc. v. Cumberland Corp., 713 F.2d 774, 776, 778 (Fed Cir. 1983) (consider patentee's deposition testimony and stating, "[Plaintiff's] assertions concerning a genuine issue of material fact . . . are unconvincing . . . in light of [the patentee's] admissions respecting the precise features on which [the plaintiff] relies."); Irise v. Axure Software Solutions, Inc., 2009 WL 3615075, at *30 n. 10 (C.D. Cal. Sept. 11, 2009) ("courts regularly allow lay witnesses, specifically the creators of particular products or inventions, to testify with regard to their personal knowledge of [the] particular invention . . . .").  Frazier's own admission that the "setting sleeve" in fact corresponds to the "engaging tube" on his tool leaves no genuine issue of material fact on this issue.  If, as Plaintiff admits, the "setting sleeve" is the "engaging tube," the "setting sleeve" cannot possibly satisfy this Court's definition of "upper collar" because that definition requires "axial contact with the **engaging tube**."  Simply put, the "setting sleeve" (which Frazier himself identifies as the "engaging tube") cannot meet the "upper collar" limitation because to do so would mean that the "setting sleeve" would be required to have axial contact with itself. Such a conclusion is illogical and directly conflicts with the patent's claims.[7]

Other than conclusory statements in his brief, supported by equally conclusory statements in his declaration and Mr. Trahan's expert opinion, Plaintiff provides no support for his position that the "setting sleeve" is in fact the "upper collar" as stated in

---

[7] Plaintiff makes much of the ProDrill bridge plug's "setting cylinder," which he says is designed to engage the setting sleeve.  The "setting cylinder," not the "setting sleeve," he argues, is the "engaging tube" identified in the '376 Patent.  (D.E. 70 at 18; D.E. 110 at 12-13.)  Not only is this statement contradicted by Frazier's own admissions, but it lacks independent support in the record.  Even if the ProDrill tools contained a "setting cylinder" in addition to a "setting sleeve," this would not necessarily lead to the conclusion that the "setting sleeve" satisfies the "upper collar" limitation.

the '376 Patent.  (D.E. 70 at 16-17.)   Such conclusory, self-serving statements are insufficient to defeat summary judgment.  See, e.g., BMG Music v. Martinez, 74 F.3d 87, 91 (5th Cir. 1996).[8]

In sum, the evidence presented to the Court demonstrates that there is no genuine issue of material fact as to whether the "setting sleeve" on the ProDrill bridge plug is in fact the "upper collar" as stated in the '376 Patent.  The Court concludes that the "setting sleeve" is in fact a separate tool used to place the bridge plug inside a wellbore and cannot be considered part of the ProDrill bridge plug itself; as such, it cannot literally infringe the "upper collar" limitation.   For these reasons, the Court must grant Defendant's summary judgment as to the "upper collar" limitation, and conclude that Defendant's ProDrill bridge plug does not infringe Claims 1, 2, or 3 of the '376 Patent.[9]

### b.    Other Arguments

In light of the Court's conclusion as to the upper collar limitation, the Court need not address Defendant's remaining non-infringement arguments.  The failure to find infringement as to "upper collar" requires the Court to conclude as a matter of law that Defendant's ProDrill bridge plugs do not infringe Claims 1-3 of the '376 Patent, the remaining valid claims.  See MicroStrategy Inc., 429 F.3d at 1352 (" If . . . even one claim limitation is missing or not met, there is no literal infringement.").  The Court must

---

[8] In his Surreply, Plaintiff also notes that Mr. Wayne Rosenthal, the "putative designer of Defendant's bridge plug" supports Mr. Trahan's declaration.  (D.E. 110 at 14.)  The relevant portions of Mr. Rosenthal's deposition provide very minimal support, if any, for Plaintiff's position.  Rosenthal states only, "[t]he tubular [or sleeve] is connected to the setting tool, and in operation the cylinder, which the tubular is connected to, moves downward."  (D.E. 110-2 at 10.)
[9] As the Court has already found non-infringement for the reasons stated above, it declines to fully address Defendant's third argument for non-infringement, namely that the setting sleeve is not "positioned about" the mandrel.  (D.E. 51 at 12.)  Nevertheless, the Court notes that Defendant has not argued this point in any detail, and has presented little evidence to support summary judgment on this ground.

grant Defendant's Motion for Summary Judgment of Non-Infringement with respect to the "upper collar" limitation.[10]

### C.      Motion for Partial Summary Judgment of Invalidity

Defendant moves for Partial Summary Judgment of Invalidity of All Claims Based on Best Mode Violation and Indefiniteness and of Invalidity of Claims 2 and 3 Based on Anticipation, Obviousness, and Written Description Requirement (D.E. 85), and seeks summary judgment of invalidity based upon the written description and enablement requirements of 35 U.S.C. § 112, and anticipation under 35 U.S.C. § 102(a) as part of the Non-Infringement Summary Judgment Motion.  (D.E. 51 at 26-30.)

It is well established that "[a] district court judge faced with an invalidity counterclaim challenging a patent that it concludes was not infringed may either hear the claim or dismiss it without prejudice, subject to review only for abuse of discretion." Liquid Dynamics Corp. v. Vaughan Co., Inc., 355 F.3d 1361, 1370-71 (Fed. Cir. 2004); Nystrom v. TREX Co., Inc., 339 F.3d 1347, 1351 (Fed. Cir. 2003) ("[T]he district court could have dismissed the counterclaim without prejudice (either with or without a finding that the counterclaim was moot) following the grant of summary judgment of non-

---

[10] Plaintiff has filed a Motion for Leave to Amend Plaintiff's Infringement Contentions (the "Motion to Amend").  (D.E. 50.)  Specifically, Plaintiff seeks to amend his Infringement Contentions to add newly discovered Accused Instrumentalities, the Defendants' "ProDrill Composite Frac Plugs."  Plaintiff himself admits that, if his motion to amend were granted, all claim construction, validity, and infringement issues would remain the same because the ProDrill Composite Frac Plugs are "nearly identical" to the ProDrill Composite Bridge Plugs previously identified.  (D.E. 50 at 8.)  As such, Plaintiff's Motion to Amend is moot in light of the Court's decision to grant summary judgment of non-infringement.  (D.E. 50.)
Nonetheless, the Court notes that Plaintiff's motion was not supported by "good cause" as required by P. R. 3-6(b).  By the time Plaintiff filed his motion to amend, the case was well into discovery, the Court had already held a Markman hearing, and had already issued an order granting Defendants' Motion for Partial Summary Judgment with respect to Claim 4.  See Davis-Lynch, Inc. v. Weatherford Int'l, Inc., 2009 U.S. Dist. LEXIS 1644, * 14 (E.D. Tex. Jan. 12, 2009) (finding Plaintiff lacked good cause to add additional products on the ground Defendants' responses to production requests were inadequate prior to the Markman hearing); Atmel Corp. v. Info. Storage Devices, Inc., 1998 WL 775115, at *2-3 (N.D. Cal. Nov. 5, 1998) (denying plaintiff's motion to amend claim chart under local rule requiring leave of court for such amendments when motion was filed after briefing on defendant's motion for summary judgment had already begun).

infringement."); see also Absolute Software, Inc. v. Stealth Signal, Inc., __ F. Supp. 2d ___, 2010 WL 2901027, at *6 n.22 (S.D. Tex. July 21, 2010) (citing Liquid Dynamics). As the Federal Circuit explained in Phonometrics, Inc. v. Northern Telecom, Inc., "a district court has discretion to dismiss a counterclaim alleging that a patent is invalid as moot where it finds no infringement . . . . The Supreme Court's decision in Cardinal Chemical Co. v. Morton Int'l, 508 U.S. 83 (1993), does not preclude this discretionary act by the district court.  Cardinal Chemical simply prohibits us, as an intermediate appellate court, from vacating a judgment of invalidity when we conclude that a patent has not been infringed, and therefore has no bearing on the district court's actions in this case." 133 F.3d 1459, 1468 (Fed. Cir. 1998).

As the Court has granted summary judgment of non-infringement with respect to Claims 1, 2, and 3, the Court in its discretion declines to address Defendant's claims of invalidity.  The Court therefore dismisses Defendant's invalidity counterclaims without prejudice, Liquid Dynamics Corp., 355 F.3d at 1371, and denies as moot Defendant's Invalidity Summary Judgment Motion (D.E. 85) as well as the invalidity section of Defendant's Non-Infringement Summary Judgment Motion.  (D.E. 51 at 26-30.)

IV.    **Conclusion**

For the reasons stated above, the Court GRANTS IN PART Defendant's Motion for Partial Summary Judgment of Non-infringement of Claims 1-3 and of Invalidity of Claim 1 of U.S. Patent No. 6,796,376. (D.E. 51.)  The Court, in its discretion, dismisses without prejudice Defendant's invalidity counterclaims (D.E. 16 at 27) and therefore DENIES AS MOOT Defendant's Invalidity Summary Judgment Motion (D.E. 85) as

well as the invalidity section of Defendant's Non-Infringement Summary Judgment Motion. (D.E. 51 at 26-30.)

SIGNED and ORDERED this 6th day of December, 2010.

Janis Graham Jack
United States District Judge